IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.   20-1114 |
| | ) | |
| FERNANDO L. SUMAZA & CO., INC.; | ) | |
| VIRGEN DEL POZO LIMITED PARTNERSHIP; | ) | |
| TROIS MARIE DIVIDEND LIMITED PARTNERSHIP; | ) | |
| LA INMACULADA LIMITED PARTNERSHIP, S.E.; | ) | |
| SAN FERNANDO LIMITED PARTNERSHIP, S.E.; and | ) | |
| VIEJO SAN JUAN, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT AND DEMAND FOR BENCH TRIAL

The United States of America alleges as follows:

### NATURE OF THE ACTION

1.  The United States brings this action to enforce the Fair Housing Act, as amended

("FHA"), 42 U.S.C. §§ 3601-3619; the FHA's implementing regulations, 24 C.F.R. §§

100.200-205; Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§

12181-12189; and the ADA Standards for Accessible Design, *see* 28 C.F.R. Pt. 36 Appendices

A & D ("ADA Standards").  As set forth below, the United States alleges that Defendants – the

owners, developers, and builders of numerous residential apartment complexes – have

discriminated against persons with disabilities by failing to design and construct covered

multifamily dwellings and associated places of public accommodation to be accessible to

persons with disabilities.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, 42 U.S.C. § 3614(a) and 42 U.S.C. § 12188(b)(1)(B).

3.  Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims alleged in this action occurred in this District.

## SUBJECT PROPERTIES

4.  Defendants have participated in the design, construction, or design and construction of one or more of the following properties (collectively, the "Subject Properties"):

5.  Virgen del Pozo is a multifamily apartment complex located at Calle Diamante Final, Sabana Grande, PR.  It is a garden-style property with three three-level, 12-unit buildings, one three-level 18-unit building, and one two- and three-level, 16-unit building, none of which has an elevator.  It has 70 single-story units, 24 of which are located on the ground level.  The property has an administrative building with a rental office, a manager's office, a community center, and bathrooms for residents and prospective renters.  The property has an outdoor basketball court, a playground for young children, a picnic area, a mail center, and dumpster facilities.  The property was built for first occupancy in 1993 and was built with Low-Income Housing Tax Credits and USDA Rural Development 515 funds.

6.  Marie Garden is a multifamily apartment complex located at Puerto Real Ward, Carr. 108, KM 5.1, Cabo Rojo, PR.  The property has one two-level 16-unit building and one two-level 8-unit building, neither of which has an elevator.  It has 24 single-story units, 12 of which are located on the ground level.  The property has an administrative building with a rental office, a manager's office, a community center, and bathrooms for residents and prospective renters.

The property has an outdoor playground, mail center, and dumpster facility.  The property was built for first occupancy in 2000 and was built with Low-Income Housing Tax Credits and USDA Rural Development 515 funds.

7.  San Fernando Elderly ("San Fernando") is a senior apartment complex located at 453 Calle Post S., Mayagüez, PR.  San Fernando is a seven-level building.  It has 70 single-story units, all of which are serviced by elevators.  It has a rental office, a manager's office, common meeting/fellowship areas, laundry facilities, bathrooms for residents and prospective renters, a mail center, and trash rooms.  The property was built for first occupancy in 2004 and was built with Low-Income Housing Tax Credits.

8.  La Inmaculada Elderly ("La Inmaculada") is a senior apartment complex located at 1715 Ave. Ponce Leon, San Juan, PR.  La Inmaculada is an eight-level building.  It has 120 single-story units, all of which are serviced by elevators.  The first level of the building has commercial office and retail space, a visitor's lobby, a resident mail center, a manager's office, a rental office, and a bathroom for prospective renters.  The other levels have units, common meeting areas, laundry facilities, resident service offices, trash rooms, a common use kitchen, and common use bathrooms.  The property was built for first occupancy in 2005 and was built with Low-Income Housing Tax Credits.

9.  San Cristobal is a multifamily apartment complex located at 413 Calle Luna, San Juan, PR.  It is a five-level building.  It has 50 single-story units, all of which are serviced by elevators.  San Cristobal was built for first occupancy in 2017.  It was built with Low-Income Housing Tax Credits and is part of the Section 8 Project-Based Housing Choice Voucher Program.

## DEFENDANTS

10.  Defendant Fernando L. Sumaza & Co., Inc. ("Sumaza & Co.") is a construction and development company based in Mayagüez, PR.  Sumaza & Co. developed each of the Subject Properties and has an ownership interest in each of the companies that owns the Subject Properties.  Sumaza & Co. is a for-profit Puerto Rico domestic corporation formed on March 4, 1982.  Its business address is Carr 44 #3060, Mayagüez, PR  00680.  Fernando L. Sumaza is the president.  Sumaza & Co. began developing properties using Low-Income Housing Tax Credits in 1991, and most of the acquisitions and developments of new construction projects are financed using proceeds from selling tax credits issued through the Puerto Rico Housing Finance Agency.  Sumaza & Co. was involved in the design and construction of the Subject Properties.

11.  Defendant Virgen del Pozo Limited Partnership was formed as a Florida limited partnership on October 1, 1991, to develop, construct, own, and maintain and operate the Virgen del Pozo apartment complex.  Its business address is P.O. Box 3685, Mayagüez, PR  00681.  Sumaza & Co. is the general partner of Virgen del Pozo Limited Partnership.  Sumaza & Co. and Virgen del Pozo Limited Partnership were involved in the design and construction of Virgen del Pozo.

12.  Defendant Trois Marie Dividend Limited Partnership was formed as a Massachusetts limited partnership on September 3, 1997, to develop, construct, own, and maintain and operate the Marie Garden apartment complex.  Its business address is Road 64, #3060, Mayagüez, PR 00680.  Sumaza & Co. is the general partner of Trois Marie Dividend Limited Partnership.  Sumaza & Co. and Trois Marie Dividend Limited Partnership were involved in the design and construction of Marie Garden.

13.   Defendant San Fernando Limited Partnership, S.E. was formed as a New York domestic limited partnership on August 22, 2002, to develop, construct, own, and maintain and operate the San Fernando apartment complex.  Its business address is P.O. Box 3006, Mayagüez, PR  00681.  Sumaza & Co. is the general partner of San Fernando Limited Partnership, S.E. Sumaza & Co. and San Fernando Limited Partnership, S.E. were involved in the design and construction of San Fernando.

14.   Defendant La Inmaculada Limited Partnership, S.E. was formed as a New York domestic limited partnership on August 22, 2002, to develop, construct, own, and maintain and operate the La Inmaculada apartment complex.  Its business address is 3060 Calle 64, Mayagüez, PR  00681.  Sumaza & Co. is a general partner of La Inmaculada Limited Partnership, S.E. Sumaza & Co. and La Inmaculada Limited Partnership, S.E. were involved in the design and construction of La Inmaculada.

15.   Defendant Viejo San Juan, LLC was formed on June 11, 2013, as a Massachusetts limited liability company to develop, construct, own, and maintain and operate the San Cristobal apartments.  Its business address is Road 64, Building 3060, Mayagüez, PR  00680.  Sumaza & Co. is the managing general member of Viejo San Juan, LLC.  Sumaza & Co. and Viejo San Juan, LLC were involved in the design and construction of San Cristobal.

16.   This complaint refers collectively to the following defendants as the "Defendants": Sumaza L. Fernando & Co., Inc., Virgen del Pozo Limited Partnership, Trois Marie Dividend Limited Partnership, San Fernando Limited Partnership, S.E., La Inmaculada Limited Partnership, S.E., and Viejo San Juan, LLC.

## FACTUAL ALLEGATIONS

### Fair Housing Act Allegations

17.  The Subject Properties described above were designed and constructed for first occupancy after March 13, 1991.

18.  The Subject Properties described above are "dwellings" and contain "dwellings" within the meaning of 42 U.S.C. § 3602(b).

19.  All of the ground-level units in the Virgen del Pozo and Marie Garden properties and all of the units in the San Fernando Elderly, La Inmaculada, and San Cristobal properties described above are "covered multifamily dwellings" within the meaning of 42 U.S.C. § 3604(f).

20.  The covered multifamily dwellings at the Subject Properties described above are subject to the accessibility requirements of 42 U.S.C. § 3604(f).

21.  The United States obtained property plans related to the Subject Properties.  The United States also inspected the exterior routes, public and common use areas, and one of each unit type at all Subject Properties.  These plans and inspections show internal, inaccessible features at covered units, including, but not limited to, doors with non-compliant openings and bathrooms and kitchens with insufficient clear floor space.  The inspections further show inaccessible features in the common use areas, including but not limited to, excessive slopes, lack of accessible parking, barriers at primary entrance doors, inaccessible mail boxes, and inaccessible bathrooms.

22.  The following is an illustrative, but not exhaustive, list of inaccessible features created and caused by Defendants in designing and constructing the Subject Properties.

**Virgen del Pozo**

23.  The inaccessible features at Virgen del Pozo include, but are not limited to:

a.  barriers at amenities provided onsite, such as the mail and dumpster facilities, including lack of an accessible route from units to the onsite amenities and amenities mounted at heights too high for wheelchair users to reach from a seated position;

b.  barriers in the approach walkways leading to primary entry doors, including one or more steps and running slopes and cross slopes[1] that are too steep to allow wheelchairs users to traverse safely.  For example, there are running slopes that are greater than 5% without handrails, cross slopes greater than 2%, curb ramps with slopes greater than 8.33%, and unbeveled changes in level greater than 1/4 inch;

c.  barriers at primary entrance doors, including knob-style hardware rather than lever-style hardware, which makes it difficult to grasp or open;

d.  common use doors in the administrative building that are less than 32 inches wide and too narrow for wheelchair users;

e.  barriers to accessible parking, including ramps that protrude into the accessible aisle, and lack of accessible routes from parking to units;

f.  light switches in units that are mounted higher than 54 inches, which is too high for wheelchair users to reach from a seated position.

g.  routes into and through units that are too narrow and that include abrupt level changes, severely impacting the ability of wheelchair users to pass through.  For

---

[1] A "running slope" is "the slope that is parallel to the direction of travel," and a "cross slope" is a slope that is perpendicular to the direction of travel.  ICC/ANSI A117.1-2003.  Running and cross slopes are measured in a ratio of rise to run (or height to length).  "For example, if a principal entrance is ten feet from a [designated accessible parking spot], and the principal entrance is raised one foot higher than the [designated accessible parking spot], then the slope is 1/10 X 100 = 10%."  HUD's Fair Housing Act Design Manual, published by HUD in 1996, updated in 1998, 1.2.

example, passageways are narrower than 36 inches, and there are unbeveled changes in level greater than 1/4 inch; and

h.  insufficient space in kitchens to allow wheelchair users to turn around; for example, kitchens have less than 40-inch maneuvering space between opposing counters or appliances.

**Marie Garden**

24.  The inaccessible features at Marie Garden include, but are not limited to:

a.  barriers at amenities provided onsite, such as the mail and dumpster facilities, including lack of an accessible route from units to the onsite amenities and amenities mounted at heights too high for wheelchair users to reach from a seated position;

b.  barriers in the approach walkways leading to primary entry doors, including running slopes and cross slopes that are too steep to allow wheelchair users to traverse safely. For example, there are running slopes that are greater than 5% without handrails, cross slopes greater than 2%, curb ramps with slopes greater than 8.33%, and unbeveled changes in level greater than 1/4 inch;

c.  barriers at primary entry doors, including knob-style hardware rather than lever-style hardware, which makes it difficult to grasp or open;

d.  common use doors in the administrative building that are less than 32 inches wide and too narrow for wheelchair users;

e.  barriers to accessible parking, including ramps that protrude into the accessible aisle, and lack of accessible routes from parking to units;

f.  light switches in units that are mounted higher than 54 inches, which is too high for wheelchair users to reach from a seated position;

g.  routes into and through units that include abrupt level changes severely impacting the ability of wheelchair users to traverse safely.  For example, routes have unbeveled changes in level greater than 1/4 inch;

h.  insufficient space in kitchens to allow wheelchair users to reach and use appliances. For example, there is less than 30-inch by 48-inch clear floor space centered on kitchen appliances; and

i.  bathrooms with toilets mounted too far from the sidewall to permit wheelchair users to safely transfer to and from the toilet.  Toilets are mounted with a centerline more than 18 inches from a sidewall.

### San Fernando

25.  The inaccessible features at San Fernando include, but are not limited to:

a.  barriers at amenities provided onsite, such as the mail facility and trash rooms, including, including lack of an accessible route from units to the onsite amenities and amenities mounted at heights too high for wheelchair users to reach from a seated position;

b.  barriers on the accessible route to units, including wall-mounted objects that protrude too far into the circulation space and could injure persons with visual impairments using the route.  For example, wall-mounted objects protrude more than 4 inches and are mounted between 27 and 80 inches above the finished floor;

c.  barriers in the approach walkways leading to building primary entry doors, including running slopes and cross slopes that are too steep to allow wheelchair users to traverse safely.  For example, there are running slopes that are greater than 5%

without handrails, cross slopes greater than 2%, curb ramps with slopes greater than 8.33%, and unbeveled changes in level greater than 1/4 inch;

d.  barriers at primary entrance doors, including knob-style hardware rather than lever-style hardware, which makes it difficult to grasp or open;

e.  common use doors in the administrative building that are less than 32 inches wide and too narrow for wheelchair users;

f.  barriers to accessible parking, including ramps with slopes greater than 8.33% and unbeveled changes in level greater than 1/4 inch, and lack of an accessible route to units;

g.  light switches in units that are mounted higher than 54 inches, which is too high for wheelchair users to reach from a seated position;

h.  routes into and through units including passageways that are too narrow and that include abrupt level changes, severely impacting the ability of wheelchair users to pass through.  For example, passageways are less than 36 inches wide and there are unbeveled changes in level greater than 1/4 inch;

i.  insufficient space in kitchens to allow wheelchair users to reach and use appliances and to turn around.  For example, there is less than 30-inch by 48-inch clear floor space centered on kitchen appliances and less than 60-inch turning radius in u-shaped kitchens; and

j.  bathrooms with toilets mounted too far from the sidewall to permit wheelchair users to safely transfer to and from the toilet.  Toilets are mounted with a centerline less than 18 inches from a sidewall.

**La Inmaculada**

26.  The inaccessible features at La Inmaculada include, but are not limited to:

a.  barriers at amenities provided onsite, such as the mail facility and trash rooms, including lack of an accessible route from units to the onsite amenities and amenities mounted at heights too high for wheelchair users to reach from a seated position;

b.  barriers at the accessible route to units, including wall-mounted objects that protrude too far into the circulation space and could injure persons with visual impairments using the route.  For example, wall-mounted objects protrude more than 4 inches and are mounted between 27 and 80 inches above the finished floor;

c.  barriers at primary entry doors, including common use doors in the administrative area with knob-style hardware, which makes it difficult to grasp or open;

d.  barriers to accessible parking, including a lack of access aisles and an accessible route from parking to units;

e.  light switches in units that are mounted higher than 54 inches, which is too high for wheelchair users to reach from a seated position;

f.  routes into and through units that are too narrow and that include abrupt level changes, severely impacting the ability of wheelchair users to pass through.  For example, passageways are less than 36 inches wide and there are unbeveled changes in level greater than 1/4 inch;

g.  insufficient space in kitchens to allow wheelchair users to reach and use appliances and to turn around.  For example, there is less than 30-inch by 48-inch clear floor space centered on kitchen appliances and less than 60-inch turning radius in u-shaped kitchens; and

   h.   insufficient space in bathrooms to allow wheelchairs users to enter the bathroom and close the door and to safely transfer to and from the toilet.  For example, there is less than 30-inch by 48-inch clear floor space outside the in-swing of the door, and toilets have a centerline less than 18 inches from a sidewall.

## San Cristobal

27.  The inaccessible features at San Cristobal include, but are not limited to:

   a.   barriers at amenities provided onsite, such as the mail facility and emergency-refuge areas, including lack of an accessible route from units to the onsite amenities and amenities mounted at heights too high for wheelchair users to reach from a seated position;

   b.   barriers at accessible routes to units, including wall-mounted objects that protrude too far into the circulation space and could injure persons with visual impairments using the route.  For example, wall-mounted objects protrude more than 4 inches and are mounted between 27 and 80 inches above the finished floor;

   c.   barriers in the approach walkways leading to primary entry doors, including running slopes and cross slopes that are too steep to allow wheelchair users to traverse safely. For example, there are running slopes that are greater than 2% and unbeveled changes in level greater than 1/4 inch;

   d.   barriers at primary unit entry doors and at common use doors in the administrative areas, including twisting-style locking hardware rather than lever-style locking hardware, which makes it difficult to operate or open.  There is insufficient space at common use door entries, which severely impacts the ability of wheelchair users to

open and close the doors from a seated position.  The common use doors have less

than 18 inches clear maneuvering space at the latch-side, pull-side;

e.  barriers to accessible parking, including a lack of an accessible route from parking to

units;

f.  light switches in units that are mounted higher than 54 inches, which is too high for

wheelchair users to reach from a seated position;

g.  doors in units that are less than 32 inches wide and too narrow for wheelchair users;

h.  insufficient space in kitchens to allow wheelchair users to reach and use appliances.

For example, there is less than 30-inch by 48-inch clear floor space centered on

kitchen appliances; and

i.  insufficient space in bathrooms to allow wheelchair uses to enter the bathroom and

close the door and to safely transfer to and from the toilet.  For example, there is less

than 30-inch by 48-inch clear floor space outside the in-swing of the door, and toilets

have a centerline less than 18 inches from a sidewall.

## ADA Allegations

28.  The leasing offices and the bathrooms for use by potential renters at the Subject

Properties and their surrounding areas were designed and constructed for first occupancy after

January 26, 1993, and are places of public accommodation within the meaning of the ADA,

42 U.S.C. § 12181(7)(E) and 28 C.F.R. § 36.104.  These areas, therefore, are required to meet

the accessibility requirements of the ADA Standards.

29.  The leasing offices and the bathrooms for use by potential renters at the Subject

Properties and their surrounding areas were not designed and constructed so that they are readily

accessible to and usable by individuals with disabilities, as required by the ADA,

42 U.S.C. § 12183(a)(1).  These offices, bathrooms, and surrounding areas fail to comply with the ADA Standards.

30.  The inaccessible features at the leasing offices and the bathrooms for use by potential renters at the Subject Properties include, but are not limited to:

a.  curb ramps leading to the rental offices that are too steep and that have abrupt level changes that severely impact the ability of wheelchair users to traverse safely.  For example, there are unbeveled changes in level greater than 1/4 inch and running slopes greater than 8.33%;

b.  walkways to rental offices with running slopes and cross slopes that are too steep to allow wheelchair users to traverse safely.  For example, there are running slopes that are greater than 5% without handrails, cross slopes greater than 2%, and unbeveled changes in level greater than 1/4 inch;

c.  accessible parking that lacks required accessibility features, including a lack of signage for accessible van-parking; and

d.  bathrooms for use by potential renters with barriers that severely impact the ability of wheelchair users to transfer to and from the toilet, access the sink without the risk of burning their legs on uninsulated hot water pipes underneath the sink, and use the mirror from a seated position.  The bathrooms lack grab bars around the toilet or have them in noncompliant locations, toilets have centerlines that are not between 16 and 18 inches from a sidewall, mirrors are mounted higher than 40 inches, and there is a lack of insulation covering exposed pipes under sinks.

## FAIR HOUSING ACT CLAIMS

31.  The United States re-alleges and incorporates by reference the allegations set forth above.

32.  The conduct of the Defendants described above violates 42 U.S.C. §§ 3604(f)(1), (f)(2), and (f)(3)(C).

33.  The Defendants violated 42 U.S.C. § 3604(f)(3)(C), and 24 C.F.R. § 100.205(c), by failing to design and construct covered multifamily dwellings in such a manner that:

    a.  the public use and common use portions of the dwellings are readily accessible to and usable by persons with disabilities;

    b.  all doors designed to allow passage into and within the dwellings are sufficiently wide to allow passage by persons in wheelchairs; and

    c.  all premises within such dwellings contain the following features of adaptive design:

        i.  an accessible route into and through the dwelling;

        ii.  light switches, electrical outlets, thermostats, and other environmental controls in accessible locations; and

        iii.  usable kitchens and bathrooms, such that an individual using a wheelchair can maneuver about the space.

34.  The Defendants, through the actions and conduct referred to in the preceding paragraph, have:

    a.  discriminated in the sale or rental of, or otherwise made unavailable or denied, dwellings to buyers or renters because of disability, in violation of 42 U.S.C. § 3604(f)(1) and 24 C.F.R. § 100.202(a);

b.   discriminated against persons in the terms, conditions, or privileges of the sale or rental of a dwelling, or in the provision of services or facilities in connection with a dwelling, because of disability, in violation of 42 U.S.C. § 3604(f)(2) and 24 C.F.R. § 100.202(b); and

c.   failed to design and construct dwellings in compliance with the accessibility and adaptability features mandated by 42 U.S.C. § 3604(f)(3)(C) and 24 C.F.R. § 100.205.

35.   The conduct of the Defendants described above constitutes:

a.   a pattern or practice of resistance to the full enjoyment of rights granted by the FHA, 42 U.S.C. §§ 3601-3619, within the meaning of 42 U.S.C. § 3614(a); and

b.   a denial to a group of persons of rights granted by the FHA, 42 U.S.C. §§ 3601-3619, which denial raises an issue of general public importance, within the meaning of 42 U.S.C. § 3614(a).

36.   Persons who may have been the victims of the Defendants' discriminatory housing practices are aggrieved persons under 42 U.S.C. § 3602(i), and may have suffered injuries because of the conduct described above.

37.   The conduct of the Defendants described above was intentional, willful, and taken in disregard of the rights of others.

## ADA CLAIMS

38.   The United States re-alleges and incorporates by reference the allegations set forth above.

39.   The Defendants violated Title III of the ADA by designing and constructing places of public accommodation, including leasing offices for multifamily dwellings and bathrooms for

use by prospective renters, without ensuring that these places of public accommodation are readily accessible to persons with disabilities to the maximum extent feasible, as required by 42 U.S.C. § 12183(a)(1).

40.   The conduct of the Defendants described above constitutes:

a.   a pattern or practice of discrimination within the meaning of

42 U.S.C. § 12188(b)(1)(B)(i) and 28 C.F.R. § 36.503(a); and

b.   unlawful discrimination that raises an issue of general public importance within the

meaning of 42 U.S.C. § 12188(b)(1)(B)(ii) and 28 C.F.R. § 36.503(b).

41. Persons who may have been victims of the Defendants' discriminatory conduct are aggrieved as defined in 42 U.S.C. § 12188(b)(2)(B), and may have suffered injuries because of the conduct described above.

42. The conduct of the Defendants described above was intentional, willful, and taken in disregard of the rights of others.

## OTHER MULTIFAMILY PROPERTIES

43. The Defendants' pattern or practice of failing to design and construct dwellings, public and common use areas, and associated places of public accommodation in compliance with the FHA and the ADA, as alleged in this complaint, may extend to other multifamily properties and, absent injunctive relief, to other multifamily properties that may be designed and constructed in the future.

## PRAYER FOR RELIEF

WHEREFORE, the United States prays that the Court enter an order that:

a.   Declares that the conduct of the Defendants, as alleged in this complaint, violates the

Fair Housing Act;

b.  Declares that the conduct of the Defendants, as alleged in this complaint, violates the Americans with Disabilities Act;

c.  Enjoins the Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with any of them from:

   i.  failing or refusing to bring the dwelling units and public and common use areas at covered multifamily properties in which each defendant was or is involved in the design and/or construction into full compliance with the FHA;

   ii.  failing or refusing to conduct FHA compliance surveys to determine whether the retrofits ordered in paragraph (i) above or otherwise performed comply with the FHA;

   iii.  designing or constructing any covered multifamily dwellings and public and common use areas in the future that do not comply with the FHA; and

   iv.  failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of the Defendants' unlawful practices to the position they would have been in but for the discriminatory conduct.

d.  Enjoins the Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with any of them from:

   i.  failing or refusing to bring the public accommodations, including leasing offices, bathrooms for use by prospective renters, and other public use areas, at covered multifamily properties in which each defendant was or is involved in the design or construction, into full compliance with the ADA and the ADA Standards;

    ii.  failing or refusing to conduct ADA compliance surveys to determine whether the retrofits ordered in paragraph (i) above or otherwise performed comply with ADA and the ADA Standards;

    iii.  designing or constructing any public accommodations in the future that do not comply with the ADA and the ADA Standards; and

    iv.  failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of the Defendants' unlawful practices to the position they would have been in but for the discriminatory conduct.

e.  Enjoins the Defendants from engaging in conduct that impedes any retrofits required to bring the Subject Properties, including covered multifamily dwelling units and public and common use areas, into compliance with the FHA and the public accommodations areas into compliance with the ADA and the ADA Standards in a prompt and efficient manner while minimizing inconvenience to the residents and visitors at the properties;

f.  Awards monetary damages under 42 U.S.C. § 3614(d)(1)(B) and 42 U.S.C. § 12188(b)(2)(B) to all persons harmed by the Defendants' discriminatory practices; and

g.  Assesses a civil penalty under 42 U.S.C. § 3614(d)(1)(C) in an amount authorized by the FHA to vindicate the public interest against each defendant that participated in the design or construction of San Cristobal.

The United States further prays for such additional relief as the interests of justice may require.

Dated: February 28, 2020

Respectfully submitted,

WILLIAM P. BARR
Attorney General

W. STEPHEN MULDROW
United States Attorney
District of Puerto Rico

/s/  Eric S. Dreiband
ERIC S. DREIBAND
Assistant Attorney General
Civil Rights Division

/s/ Hector E. Ramirez
HECTOR E. RAMIREZ
USDC-PR No. 214902
Assistant United States Attorney
Torre Chardón, Suite 1201
350 Carlos Chardón Street
San Juan, PR  00918
Phone: (787) 282-1845
E-mail: hector.e.ramirez@usdoj.gov

/s/ Sameena S. Majeed
SAMEENA SHINA MAJEED
Chief

/s/ Noah D. Sacks
ANDREA STEINACKER
Special Litigation Counsel
RYAN G. LEE
Wis. Bar No. 1041468
NOAH SACKS
CA. Bar. No. 246694
Trial Attorneys
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
150 M Street, N.E., 8th Floor
Washington, DC 20530
Phone: (202) 305-3109
Fax: (202) 514-1116
E-mail: ryan.lee@usdoj.gov
E-mail: noah.sacks@usdoj.gov


Attorneys for Plaintiff
United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF PUERTO RICO

## CATEGORY SHEET

**You must accompany your complaint with this Category Sheet, and the Civil Cover Sheet (JS-44).**

Attorney Name (Last, First, MI):

USDC-PR Bar Number:

Email Address:

1.      Title (caption) of the Case (provide only the names of the <u>first</u> party on <u>each</u> side):

Plaintiff:

Defendant:

2.      Indicate the category to which this case belongs:

☐  Ordinary Civil Case

☐  Social Security

☐  Banking

☐  Injunction

3.      Indicate the title and number of related cases (if any).

4.      Has a prior action between the same parties and based on the same claim ever been filed before this Court?

☐  Yes

☐  No

5.      Is this case required to be heard and determined by a district court of three judges pursuant to 28 U.S.C. § 2284?

☐  Yes

☐  No

6.      Does this case question the constitutionality of a state statute?  (See, Fed.R.Civ. P. 24)

☐  Yes

☐  No

Date Submitted:

rev. Dec. 2009

JS 44  (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

UNITED STATES OF AMERICA

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
AUSA Hector E. Ramirez-Carbo
US Attorney's Office, 350 Chardon Ave, Suite 1201
San Juan, PR 00918 Ph. 787-766-5656

**DEFENDANTS**

Fernando L. Sumaza & Co. Inc., et..als.

County of Residence of First Listed Defendant   Mayaguez, P.R.
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Robert L. Duston
Saul, Ewing Arnstein & Lehr, LLP

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

☒ 1   U.S. Government
Plaintiff

☐ 2   U.S. Government
Defendant

☐ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*                Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans | ☐ 345 Marine Product Liability | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| (Excludes Veterans) | | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☒ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 540 Mandamus & Other ☐ 550 Civil Rights | ☐ 462 Naturalization Application ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1   Original
Proceeding

☐ 2   Removed from
State Court

☐ 3   Remanded from
Appellate Court

☐ 4   Reinstated or
Reopened

☐ 5   Transferred from
Another District
*(specify)*

☐ 6   Multidistrict
Litigation -
Transfer

☐ 8   Multidistrict
Litigation -
Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC 3601-3619; 42 USC 12181-12189
Brief description of cause:
Violations to Fair Housing Act and American with Disabilities Act

**VII. REQUESTED IN COMPLAINT:**

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $
335,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

**VIII. RELATED CASE(S) IF ANY**

*(See instructions):*

JUDGE                                DOCKET NUMBER

DATE
02/28/2020

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT                APPLYING IFP                JUDGE                MAG. JUDGE