IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 20-1114 |
| ) | (GAG) |
| FERNANDO L. SUMAZA & CO., INC., ET AL., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**CONSENT ORDER**

**I.     INTRODUCTION**

1.     The United States initiated an investigation on June 13, 2017 of alleged violations by Defendants identified in paragraph 2, below, of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–3619, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181–12189. Defendants cooperated fully in that investigation. Following that investigation, the United States was authorized to file a Complaint in federal district court, and the parties entered into discussions and reached an agreement to the terms of this Consent Order.

2.     The United States' Complaint alleges that Defendants Fernando L. Sumaza & Co., Inc.; Virgen del Pozo Limited Partnership; Trois Marie Dividend Limited Partnership; San Fernando Limited Partnership, S.E.; La Inmaculada Limited Partnership, S.E.; and Viejo San Juan, LLC ("Defendants") engaged in a pattern or practice of discrimination against persons with disabilities and denied rights to a group of persons because of disability by failing to design and construct the following covered multifamily dwellings (the "Subject Properties") with all of the features of accessible and adaptive design and construction required by the FHA, 42 U.S.C. §§ 3604(f)(1), (f)(2), and (f)(3)(C), and, where applicable, in a manner required by the ADA, 42 U.S.C. § 12183(a)(1):

    1.     Virgen del Pozo, Sabana Grande, PR
    2.     Marie Gardens, Cabo Rojo, PR
    3.     San Fernando Elderly Center, Mayagüez, PR
    4.     La Inmaculada Elderly Center, San Juan, PR
    5.     San Cristobal, San Juan, PR

**A.     Defendants**

3.     As outlined in Appendix A, Defendants Fernando L. Sumaza & Co., Inc. ("Sumaza & Co.") and Virgen del Pozo Limited Partnership; Trois Marie Dividend Limited Partnership; San Fernando Limited Partnership, S.E.; La Inmaculada Limited Partnership, S.E.;

and Viejo San Juan, LLC("Property Owners") (referred to collectively as "Defendants") are associated with the design and construction of the Subject Properties. Sumaza & Co. is or was the developer of the Subject Properties and is currently the property manager and General Partner of the Subject Properties. Each of the Property Owners is the owner of one of the Subject Properties. Each Property Owner is jointly and severally liable with Sumaza & Co., and has joint responsibility with Sumaza & Co. under this Consent Decree, with regard to the Subject Property it owns, but has no liability or responsibility for the other Subject Properties.

**B.     Relevant Requirements of the Fair Housing Act**

4.     The FHA provides that, for residential buildings with an elevator consisting of four or more dwelling units, all units that are designed and constructed for first occupancy after March 13, 1991, are "covered multifamily dwellings" and must include certain basic features of accessible and adaptive design to make such units accessible to or adaptable for use by a person with a disability. 42 U.S.C. §§ 3604(f)(3)(C) and (f)(7)(A).

5.     The FHA provides that, for non-elevator residential buildings with four or more dwelling units, all ground-floor units that are designed and constructed for first occupancy after March 13, 1991, are "covered multifamily dwellings" and must include certain basic features of accessible and adaptive design to make such units accessible to or adaptable for use by a person with a disability. 42 U.S.C. §§ 3604(f)(3)(C) and (f)(7)(B).

6.     The accessible and adaptive design provisions of the FHA require that for covered multifamily dwellings: (i) the public use and common use portions of such dwellings are readily accessible to and usable by persons with a disability; (ii) all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by persons with a disability using wheelchairs; (iii) all premises within such dwellings contain the following features of adaptive design: (I) an accessible route into and through the dwelling; (II) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations; (III) reinforcements in bathroom walls to allow later installation of grab bars; and (IV) usable kitchens and bathrooms such that an individual using a wheelchair can maneuver about the space. 42 U.S.C. § 3604(f)(3)(C). These features are referred to herein as the "Accessible Design Requirements."

7.     For the purposes of this Consent Order, the parties agree that the Subject Properties were designed and constructed for first occupancy after March 13, 1991, and therefore all the units in buildings with elevators and the ground-floor units in non-elevator buildings at the Subject Properties are "covered multifamily dwellings" within the meaning of the FHA, 42 U.S.C. §§ 3604(f)(7)(A) and (B). As such, those units and the public and common use areas including the accessible pedestrian routes at the Subject Properties must comply with the Accessible Design Requirements of 42 U.S.C. § 3604(f)(3)(C).

**C.     Relevant Requirements of the Americans with Disabilities Act**

8.     The ADA, and the ADA Standards for Accessible Design, ADA Accessibility Guidelines for Buildings and Facilities, 28 C.F.R. pt. 36, app. A (the "ADA Standards"), that have been issued by the U.S. Department of Justice to implement the design and construction

requirements of Title III of the ADA, also require that all "public accommodations" designed and constructed for first occupancy after January 26, 1993, and the goods, services, facilities, privileges, advantages, or accommodations of those public accommodations, be readily accessible to and usable by persons with disabilities in accordance with certain accessibility standards promulgated under that Act. 42 U.S.C. §§ 12182(a) and 12183(a)(1). A rental or sales office for an apartment, condominium, or patio home complex is a "public accommodation" under the ADA. 42 U.S.C. § 12181(7)(E).

9. For the purposes of this Consent Order, the parties agree that the leasing offices for the Subject Properties were designed and constructed for first occupancy after January 26, 1993, and therefore the leasing offices and the facilities and privileges provided at those offices such as bathrooms and public parking are required to be designed and constructed in accordance with the standards promulgated under the ADA. Only the leasing offices at the Subject Properties that are public accommodations are subject to the ADA under this Consent Order. Common use areas and other amenities that are not public accommodations are subject to the FHA, but not the ADA, under this Consent Order. This Consent Order does not cover employee-only spaces or commercial-only spaces at the Subject Properties.

**D.    Relevant Requirements of the Rehabilitation Act of 1973 (UFAS)**

10. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 792, as amended, requires that minimal guidelines for accessibility be met at federally owned and federally assisted properties. The Uniform Federal Accessibility Standards ("UFAS") establish the technical requirements of the Rehabilitation Act. Under UFAS, five percent of the total number of units at federally assisted multifamily housing projects must be UFAS-compliant. UFAS, Section 4.1.4(11).

**E.    Subject Properties**

   **i.    Virgen del Pozo**

11. Virgen del Pozo is a non-elevator multifamily property located at Calle Diamante Final, Sabana Grande, PR. Its 24 FHA-covered units comprise 17 three-bedroom standard unit types, one one-bedroom standard unit type, two four-between standard unit types, and four two-bedroom HC unit types. It has an administrative building with a leasing office, manager's office, and community center. It has a basketball court, playgrounds, picnic area, mail center, and dumpster facilities. It was developed by Sumaza & Co. and is owned by Virgen del Pozo Limited Partnership. The property was built with Low Income Housing Tax Credits ("LIHTC") and USDA Rural Development 515 funds.

   **ii.   Marie Gardens**

12. Marie Garden Apartments is a non-elevator multifamily property located at Puerto Real Ward, Carr. 108, KM 5.1, Cabo Rojo, PR. Its 12 FHA-covered units comprise two one-bedroom standard unit types, six two-bedroom standard unit types, two three-bedroom standard unit types, and two two-bedroom HC unit types. It has an administrative building with a leasing office, manager's office, and community center. It has a playground, mail center, and dumpster

facility.  It was developed by Sumaza & Co. and is owned by Trois Marie Dividend Limited Partnership.  The property was built with LIHTC and USDA Rural Development 515 funds.

### iii. San Fernando Elderly Center

13.     San Fernando Elderly Center is a seven-level elevator property located at 453 Calle Post S, Mayagüez, PR.  Its 70 FHA-covered units consist of two three-bedroom standard unit types, 66 one-bedroom standard unit types, and four one-bedroom HC unit types.  It has a leasing office, manager's office, common meeting areas, laundry facilities, mail center, and trash rooms.  It was developed by Sumaza & Co. and is owned by San Fernando Limited Partnership, S.E.  The property was built with LIHTC.

### iv. La Inmaculada Elderly Center

14.     La Inmaculada Elderly is an eight-level elevator property located at 1715 Ave. Ponce de Leon, San Juan.  Its 120 FHA-covered units comprise 113 one-bedroom standard unit types, which have two different u-shaped kitchen layouts, and seven one-bedroom HC types.  The first level of the building is used for commercial retail, a lobby, a mail center, and a manager's office and leasing office.  The other levels have units, common meeting areas, laundry facilities, and trash rooms.  It was developed by Sumaza & Co. and is owned by La Inmaculada Limited Partnership, S.E.  The property was built with LIHTC.

### v. San Cristobal

15.     San Cristobal is a five-level elevator multifamily property located at 413 Calle Luna, San Juan, PR.  Its 50 FHA-covered units comprise 45 standard unit types (which are a combination of one- and two-bedroom types) and five HC types.  The building has a rental office, management offices, laundry facilities and other common spaces on the first level.  It was developed by Sumaza & Co. and is owned by Viejo San Juan, LLC.  It was built with LIHTC.

**F.     Federal Funding for Certain Subject Properties**

16.     Virgen del Pozo and Marie Gardens were built with the assistance of the USDA Rural Development 515 Funds.  USDA's Rural Rental Housing Loans are direct, competitive mortgage loans made to provide affordable multifamily rental housing for very-low- and moderate-income families, elderly persons, and persons with disabilities.  The loans are for up to 30 years at an effective one percent interest rate and are amortized over 50 years.  USDA regulations require developers of new construction of multifamily projects receiving USDA grants to make five percent of the units at the project (but not less than one unit) accessible to individuals with mobility impairments and an additional two percent of the units (but not less than one unit) accessible to individuals with sensory impairments in accordance with UFAS.  See Title 24 CFR, part 8, Subpart E, Sections 8.20, 8.22, and 8.32.

17.     San Cristobal receives assistance under the U.S. Department of Housing and Urban Development's ("HUD") Project-based vouchers ("PBV"), a program authorized by the U.S. Housing Act of 1937 and administered by HUD.  The program subsidizes the rent in privately owned rental housing where the subsidy is tied to the unit—not the individual renter.

PBV projects must comply with the accessibility requirements in Section 504 of the Rehabilitation Act and must follow UFAS.  See 24 C.F.R. § 983.102.

18.     Designated UFAS units at Virgen del Pozo, Marie Gardens, and San Cristobal fail to comply with the accessibility requirements of UFAS, including, but not limited to, one or more of the following: lack of required accessible signage at unit entries; primary entry doors that lack required clear maneuvering space at the push- or pull-side approaches; lack of 30" x 48" clear floor space with required knee and toe space at lavatory bowls for a forward approach; bathroom sinks that lack required pipe insulation; medicine cabinets and mirrors mounted too high above the finished floor for use by a person in a wheelchair; showers that lack the required clear floor space because the controls are not mounted on the back wall of the shower and within the reach range of mounted seats; grab bars at toilets and in showers mounted in inaccessible locations; kitchens that lack required work surface with 30" clear wide space for a forward approach; kitchen sinks that lack minimum 30" wide space and required knee and toe space for forward approach; kitchen sinks that lack required pipe insulation; and bedrooms lack required emergency visual alarms.

**G.     Consent of the Parties to this Order**

19.     Defendants deny that they engaged in any form of intentional or willful discrimination against persons with disabilities and state that at all times they have attempted to comply with all applicable federal laws, including those requiring accessibility in design and construction.  Defendants have and would raise various defenses to the allegations made by the United States.

20.     The Parties agree that this Consent Degree is being entered into by Defendants as a compromise of disputed claims, and to avoid the cost and burden of litigation, and should not be deemed an admission of liability by Defendants.  The United States acknowledges that Defendants have acted in good faith during the investigation and have initiated good faith efforts to address accessibility issues in these low-income properties.

21.     Defendants agree to address the elements that the United States alleges are not in compliance with the Accessible Design Requirements of the FHA and, where applicable, the ADA and UFAS, as set forth herein.

22.     The parties agree that this Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 3614(a) and 12188(b)(1)(B).  The parties further agree that this controversy should be resolved without further proceedings and without an evidentiary hearing or trial.

23.     As indicated by the signatures appearing below, the parties have agreed to the entry of this Consent Order.

Based on the Court's review of the record and with the agreement of the parties, the Court orders as follows:

## II. GENERAL INJUNCTION

24. Defendants and each of their officers, employees, agents, successors, and assigns, and all other persons in active concert or participation with them are enjoined from discriminating on the basis of disability as prohibited by the Fair Housing Act, 42 U.S.C. §§ 3604(f)(1)–(3), and the Americans with Disabilities Act, 42 U.S.C. §§ 12182(a) and 12183(a)(1).

25. Defendants and each of their officers, employees, agents, successors, and assigns, and all other persons in active concert or participation with them, are enjoined from interfering or preventing the retrofitting ordered herein or the implementation or completion of this Consent Order. Defendants agree to allow access to the public and common use areas of the Subject Properties, and access to unit interiors at the Subject Properties, for the purpose of planning, evaluating, and performing any action required under this Order to bring the public and common use areas and the unit interiors into compliance with the FHA and the Fair Housing Accessibility Guidelines ("FHA Guidelines") (56 Fed. Reg. 9472 *set seq.* (1991)), the ADA, or UFAS, and for the purpose of interviewing or meeting with residents or tenants to aid in the implementation or completion of this Consent Order.

## III. RETROFITS AT THE SUBJECT PROPERTIES

26. The United States, as set forth herein and in its Complaint, alleges that the Subject Properties do not meet the accessibility requirements of the FHA, the FHA Guidelines and/or the ADA, and the ADA Standards, where applicable. To address the United States' allegations, Defendants, in accordance with the FHA, the FHA Guidelines, the ADA, and the ADA Standards, shall complete the actions and retrofits described in this section and in <u>Appendices B.1 – F.3</u>, and in accordance with the <u>Route and Inspection General Protocol</u> and the <u>Interior Retrofit Inspection Protocol</u> separately agreed to by the United States and Defendants and further described in <u>Section V</u>, <u>infra</u>. Defendants further agree to complete actions and retrofits necessary to bring units into compliance with UFAS as set forth in this Order.

**A.   Retrofits at Virgen del Pozo, Marie Gardens and San Fernando Elderly Center**

27. As soon as reasonably possible, but by no later than thirty (30) months from the entry of this Consent Order, Defendants will complete the retrofits needed to make specified elements identified in Appendices B, C and D compliant with the FHA and the FHA Guidelines, and where applicable, the ADA and ADA Standards, and in accordance with the <u>Route and Inspection General Protocols and Interior Inspection protocol,</u> at Virgen del Pozo, Marie Gardens and San Fernando Elderly Center.

**B.   Retrofits to La Inmaculada Elderly Center and San Cristobal**

28. As soon as reasonably possible, but by no later than eighteen (18) months from the entry of this Consent Order, Defendants will complete the retrofits needed to make specified elements identified in Appendices E and F compliant with the FHA and the FHA Guidelines, and where applicable, the ADA and ADA Standards, and in accordance with the <u>Route and Inspection General Protocols and Interior Inspection protocol</u>, at La Inmaculada Elderly Center and San Cristobal.

29.     Within forty-five (45) days from the entry of this Order, Defendants will provide a notice in English and Spanish that is substantially equivalent to Appendix G to residents at the Subject Properties.  The notice will inform residents that (1) the United States alleges that the units and public and common use areas do not meet the requirements of the FHA and the FHA Guidelines, and that to settle this lawsuit, Defendants have agreed to perform certain retrofits to the dwelling units; (2) the unit must be retrofitted within twenty-four (24) months of the date of the entry of the Order; (3) the resident can schedule the retrofits; (4) the retrofits will be performed at no cost to the resident; and (5) temporary relocation, or if temporary relocation is unavailable, a payment equivalent to the U.S. General Services Administration rate will be provided to the resident for temporary relocation expenses incurred by the tenant, as required by Section IV of this Order, *infra*.

30.     Residents may request in writing that the retrofits of the interior of their units required by this Consent Order be scheduled, and the requests will be granted by Defendants on a first-come, first-served basis.  Defendants must complete the retrofits as promptly as practical, but no later than forty-five (45) days from the date on which the retrofits were requested by a resident on a first-come, first-served basis, with such deadline being subject to para. 68, below, of this Consent Order.

## IV.   INCONVENIENCE AND OVERNIGHT STAYS FOR RETROFITTING UNIT INTERIORS AT SUBJECT PROPERTIES

31.     Defendants will endeavor to minimize inconvenience to residents in scheduling and performing retrofits required by this Consent Order at the Subject Properties.

32.     Defendants will offer any resident of a unit scheduled to undergo a retrofit who will be dislocated from the unit for more than twenty-four (24) hours consecutively a similarly sized furnished unit at one of the Subject Properties at no cost.  In the event that a similarly sized furnished unit at one of the Subject Properties is not available, Defendants will pay the resident the applicable government per diem rate for food and lodging for the local area (as available at www.gsa.gov–click on "per diem rates" under travel) for each day of undue inconvenience or hardship for the resident(s).  Such payment will be made prior to the commencement of any retrofit work on the resident's unit, so that the resident can use the money to obtain alternative living accommodations and food while dislocated.

## V.   NOTICE OF RETROFITS TO PUBLIC AND COMMON USE AREAS AT SUBJECT PROPERTIES

33.     Within sixty (60) days of the entry of this Consent Order, Defendants will provide written notice in English and Spanish to all residents at the Subject Properties stating that the retrofits required by this Order will be performed to the public and common use areas of the Subject Properties, which include unit entrances and accessible routes.  Such notices will conform to Appendix H.  Defendants will certify to the United States in writing that the notices have been distributed and the manner in which they were distributed within ten days after such distribution.

## VI.    NEUTRAL INSPECTOR AT SUBJECT PROPERTIES

34. Defendants have entered into a contract with Mark J. Mazz to serve as a neutral inspector, approved by the United States ("Inspector"), to conduct on-site inspections of the retrofits that have been performed under this Consent Order to determine whether the retrofits have been completed in accord with the specifications in this Order's Appendices B.1–F.3, the Route and Inspection General Protocol, and Interior Retrofit Inspection Protocol that describe the retrofits for the properties.  If an additional inspector is needed or desired, any such inspector must also be approved by the United States.  The Inspector(s) will have expertise in the Accessible Design Requirements of the FHA, and the requirements of the FHA Guidelines, ADA, ADA Standards, American National Standards Institute ("ANSI") A117.1-1986, and where applicable, UFAS.  The Inspector has the discretion to propose alternatives to the retrofits specified in the Appendices B.1—F.3 that he believes will provide equivalent accessibility and facilitation, but the adoption of any such alternative is subject to the written approval of the United States.

35. An inspection of a Subject Property will take place within thirty (30) days of the completion of all of the retrofits to the subject properties, or as soon thereafter as practicable for each.  Defendants will give the United States at least three (3) weeks' notice of the inspection and will give the United States an opportunity to have its representative present for the inspection.

36. The inspections of accessible pedestrian routes, public and common use areas, and dwelling units will be conducted by the Inspector in accordance this Consent Order and the relevant Appendices.  The inspections of the accessible pedestrian routes will also be conducted by the Inspector in accordance with the written Route and Inspection General Protocol separately agreed to by Defendants and the United States, which will be provided to the Inspector.  The inspections of the dwelling units will be conducted by the Inspector in accordance with the written Interior Retrofit Inspection Protocol separately agreed to by Defendants and the United States, which will be provided to the Inspector.

37. The Inspector will set out the results of each inspection of the Subject Property, including deficits, if any, in writing and will send that report to counsel for Defendants and for the United States.  The Inspector will take digital photographs of any deficiencies identified at each Subject Property.  If the inspection indicates that not all the required retrofits have been made as specified in the Appendices, Interior Retrofit Inspection Protocol, or the Route and Inspection General Protocol that apply to a Subject Property, Defendants involved in that specific Subject Property, as set forth above, will correct any deficiencies within sixty (60) days and will pay for another inspection by the same Inspector to certify the deficiencies have been corrected.  This process will continue until the Inspector certifies that all the necessary retrofits have been made.  Defendants involved in that specific property will pay all of the Inspector's reasonable costs associated with these inspections of the Subject Property, and such payments will be made without regard to the Inspector's findings.  Upon reasonable notice to Defendants, representatives of the United States will be permitted to inspect the retrofits made by Defendants in accordance with this Consent Order to ensure compliance, provided, however, that the United States will endeavor to minimize any inconvenience caused by such inspections.

## VII.  TRANSFER OF INTEREST IN SUBJECT PROPERTIES

38. The sale, foreclosure, or any other transfer of ownership, in whole or in part, whether voluntary or involuntary, of any of the Subject Properties shall not affect Defendants' continuing obligation to retrofit any Subject Property as specified in this Consent Order. Should a Defendant sell or transfer ownership of any Subject Property, in whole or in part, or any portion thereof, prior to the completion of the retrofits specified in Sections III and VI of this Order, the Defendant will at least thirty (30) days prior to completion of the sale or transfer: (a) provide to each prospective buyer written notice that the Subject Property is subject to this Order, including specifically the Defendant's obligations to complete required retrofit work and to allow inspections, along with a copy of this Order; and (b) provide to the United States, by e-mail and first-class mail, written notice of the intent to sell or transfer ownership, along with a copy of the notice sent to each buyer or transferee, and each buyer's or transferee's name, address, and telephone number.

## VIII.  NO RAISING RENT PRICES

39. Defendants with an ownership or management interest in a Subject Property, or their agents and affiliated companies, may not raise the rent price of any dwelling unit, or demand any deposit or other fee for a dwelling unit at any Subject Property, solely because of contemplated or completed retrofits in a dwelling unit, accessible route, or public or common use area performed under this Order.

## IX.  NON-DISCRIMINATION IN FUTURE DESIGN AND CONSTRUCTION

40. During the term of this Order Defendant Fernando L. Sumaza & Co., Inc. will maintain, and provide to the United States, the following information and statements regarding multi-family housing properties under construction and any other covered multifamily dwellings intended to be, or which actually are, developed, built, designed, constructed, or engineered in whole or in part, by any Defendant or by any entities in which any Defendant has a position of control as an officer, director, member, or manager, or has a ten-percent (10%) or larger ownership share. Such information and statements need to be maintained and/or provided only on properties in which a Defendant is actually involved, not on those properties in which a Defendant bids or expresses an interest, but does not become finally involved; and need not be maintained and/or provided regarding any maintenance, renovation or other work that is not considered an "alteration" as that term is defined under the FHA Guidelines or the ADA Standards, or does not involve paths of travel, common areas or units used by tenants or visitors to the property (*e.g.*, employee-only areas).

      a. the name and address of the property;
      b. a description of the property and the individual units;
      c. the name, address, and telephone number of the civil engineer(s) involved with the project;
      d. a statement from the civil engineer(s) involved with the property acknowledging and describing his/her knowledge of and training in the Accessible Design Requirements of the FHA, 42 U.S.C. § 3406(f)(1), (f)(2), and (f)(3)(C), the requirements of the FHA Guidelines, the ADA,

            42 U.S.C. § 12183(a)(1), the ADA Standards, and in the field of accessible site design and certifying that he/she has reviewed the engineering documents for the project and that the design specifications therein fully comply with the requirements of the Fair Housing Act, the FHA Guidelines, the ADA, the ADA Standards, ANSI A117.1-1986, and UFAS;

    e.    the name, address and telephone number of the architect(s) involved with the property; and

    f.    a statement from the architect(s) involved with the property acknowledging and describing his/her knowledge of and training in the Accessible Design Requirements of the FHA, 42 U.S.C. § 3406(f)(1), (f)(2), and (f)(3)(C), the requirements of the FHA Guidelines, the ADA, 42 U.S.C. § 12183(a)(1), the ADA Standards, and in the field of accessible site design and certifying that he/she has reviewed the architectural plans for the property and that the design specifications therein fully comply with the requirements of the Fair Housing Act, the FHA Guidelines, the ADA, the ADA Standards, ANSI A117.1-1986, and UFAS.

    g.    If the engineering documents or architectural plans are revised, and the revisions could have any impact on the accessibility of the dwellings or property, Fernando L. Sumaza & Co., Inc. will obtain, maintain, and provide to the United States upon request, a statement from the civil engineer(s) or architect(s) involved with the property that all specifications in the revised engineering documents or architectural plans, as pertinent, comply with the Accessible Design Requirements of the Fair Housing Act, the FHA Guidelines, and the ADA, the ADA Standards, ANSI A117.1-1986 and UFAS, where applicable.

    41.    Defendants will take all actions to make the construction of any Subject Property under construction, or any future construction within the meaning of para. 40 above, fully compliant with the Accessible Design Requirements of the Fair Housing Act, the FHA Guidelines, the ADA and, the ADA Standards where applicable, and where applicable, UFAS. During the term of this Consent Order, upon reasonable notice, the United States will be permitted full access to such properties to inspect for compliance with the FHA, the FHA Guidelines, the ADA, ADA Standards, and if applicable, UFAS.

    **X.**    **SETTLEMENT FUND AND PAYMENTS TO AGGRIEVED PERSONS**

    42.    Within thirty (30) days after the date of this Consent Order, Defendants shall deposit in an interest-bearing account the total sum of ONE HUNDRED FIFTY THOUSAND DOLLARS ($150,000) for the purpose of compensating any aggrieved persons who may have suffered as a result of the alleged discriminatory housing practices by Defendants. This money shall be referred to as the "Settlement Fund."

    43.    Within thirty (30) days of the entry of this Consent Order, Defendants shall publish in English and Spanish the Notice to Potential Victims of Alleged Housing Discrimination ("Notice") at Appendix I informing readers of the availability of compensatory funds. The Notice shall be no smaller than three columns by six inches and shall be published on

three occasions in newspapers of general circulation serving each locality in which a Subject Property is located.  The publication dates shall be separated from one another by twenty-one (21) days, and at least two of the publication dates shall be on a Sunday.  Within ten days of each publication date, Defendants shall provide the newspaper containing the Notice to counsel for the United States.

44. Within thirty (30) days of the entry of this Order, Defendants shall send a copy of the Notice to each of the following organizations:

    i.    Department of Housing and Urban Development
        Office of Fair Housing and Equal Opportunity
        235 Federico Costa St., #200
        San Juan, PR 00918

    ii.    Movimiento para el Alcance de Vida Independiente (MAVI)
        Región Metro Edificio Las Nubes
        Calle Federico Costas, #151
        San Juan, PR 00918

    iii.    Oficina del Procurador de las Personas de Edad Avanzada (OPPEA)
        PO Box 191179
        San Juan, PR 00919

    iv.    Defensoría de personas con Impedimentos (DPI)
        Government Center Roberto Sanchez Vilella (Minillas)
        South Tower, Floor 2, Office 203
        Ave. De Diego, Santurce, PR 00912

45. Within thirty (30) days of the entry of this Order, Defendants shall send, by regular mail, postage pre-paid, a copy of the Notice to each present resident at the Subject Properties, and to each prior resident within five years of the entry of the Consent Order for whom they have records.  For past residents, Defendants will have complied with the requirements of this paragraph by mailing such notice to the forwarding address (if any) provided to the owners or managers of the Subject Properties or their agents by the former resident at the time the former tenant moved out.  Within sixty (60) days of entry of this Order, Defendants shall provide to counsel for the United States proof that the Notices have been sent.

46. The Notices provide that individuals must contact the Department of Justice within one year of the entry of this Order.  The United States shall investigate the claims of allegedly aggrieved persons and make a determination of which persons are aggrieved and whether any amount of damages should be paid to each such person.  The determinations of the appropriate amount of damages shall total no more than ONE HUNDRED FIFTY THOUSAND DOLLARS ($150,000).  The United States will provide Defendants with an opportunity to respond and provide information regarding allegedly aggrieved persons.  Defendants agree that the determinations of the United States shall be final, and Defendants hereby waive the right to contest the United States' determination in this or any other proceeding.  Defendants agree as part of the settlement described herein that they will not seek to interfere with or oppose the

United States' determinations regarding the aggrieved persons and the appropriate amount of damages paid to each. The United States agrees to make a good faith effort to complete its investigation within one year after the entry of this Order.

47. Within fifteen (15) days of the United States' final determination, Defendants shall deliver to the United States checks payable to the allegedly aggrieved persons in the amounts determined by the United States, plus a proportionate share of the interest that has accrued in the Settlement Fund as of the day before the checks are sent to the United States. In no event shall the aggregate of all such checks exceed the sum of the Settlement Fund, including accrued interest. No aggrieved person shall be paid until he/she has executed and delivered to counsel for the United States the release at Appendix J.

48. After the satisfaction of paras. 42-47 above, any money remaining in the Settlement Fund, including interest, shall be used by Defendants for the sole purpose of performing retrofits required by Appendices B.1-F.3, or as reimbursement for the cost of any such retrofits already completed.

49. Defendants shall permit the United States, upon reasonable notice, to review any records that may reasonably facilitate its determinations regarding the claims of alleged aggrieved persons.

50. Nothing in this Consent Order shall preclude the United States from making its own efforts to locate and provide notice to potential aggrieved persons.

## XI.  CIVIL PENALTY

51. Within fifteen (15) days of the date of this Consent Order, Defendants will pay a civil penalty of TEN THOUSAND DOLLARS ($10,000) pursuant to 42 U.S.C. § 3614(d)(1)(C) and 42 U.S.C. § 12188(b)(2)(C)(i) to vindicate the public interest. This payment shall be in the form of an electronic funds transfer pursuant to written instructions to be provided by the United States. The civil penalty is a debt for a fine, penalty, or forfeiture payable to and for the benefit of the United States within the meaning of 11 U.S.C. § 523(a)(7), and is not compensation for actual pecuniary loss. No Defendant shall seek to discharge any part of this debt in bankruptcy.

## XII.  EDUCATIONAL PROGRAM

52. Within thirty (30) days of the entry of this Consent Order, Defendants will provide a copy of this Order to all their agents and employees involved in the design or construction of the Subject Properties or in the planning or development of other covered multifamily properties and secure the signed statement from each agent or employee acknowledging that he or she has received and read the Order, or has had it explained to him or her, and has had an opportunity to have questions about the Order answered. This statement will be substantially similar to the form of Appendix K.

53. During the term of this Order, within thirty (30) days after the date he or she commences an agency or employment relationship with a Defendant, each new agent or employee involved in the design and construction of any covered multifamily properties will be given a copy of this Order and be required to sign the statement acknowledging that he or she has

received and read the Order, or has had it explained to him or her, and has had an opportunity to have questions about the Order answered. This statement will be substantially similar to the form of Appendix K.

54. Defendants will also ensure that they and their employees and agents who have primary management authority over the design and/or construction of covered multifamily dwellings have a copy of, are familiar with, and personally review, the Fair Housing Accessibility Guidelines, 56 Fed. Reg. 9472 (1991) and the United States Department of Housing and Urban Development, Fair Housing Act Design Manual, A Manual to Assist Builders in Meeting the Accessibility Requirements of the Fair Housing Act (Rev. April 1998).

55. Defendants and all employees and agents whose duties, in whole or in part, involve the management, sale and/or rental of multifamily dwellings at issue in this case will be informed of those portions of the Fair Housing Act that relate to accessibility requirements, reasonable accommodations, and reasonable modifications. If Defendants choose to do formal training on FHA discrimination and operations issues, they may use a trainer of their choosing, including Defendants' counsel.

56. Within ninety (90) days of the date of entry of this Consent Order, Defendants and all their employees and agents whose duties, in whole or in part, involve or will involve primary management authority over the development, design, and/or construction of multifamily dwellings will undergo training on the design and construction requirements of the FHA and the ADA. The training will be conducted by Mark Mazz, AIA, who has been approved by the United States in advance of the training, and any expenses associated with this training will be borne by Defendants. If Mark Mazz is unable to provide this training, then they must use another qualified individual unconnected with Defendants, who has been approved by the United States. Defendants have discretion over how to structure this training. Defendants will provide to the United States, within thirty (30) days prior to the training, copies of the training outlines and any materials to be distributed by the trainers, which are subject to the approval of the United States. Certifications executed by all Defendants and covered employees and agents confirming their attendance, in a form substantially equivalent to Appendix L, will be provided to the United States within thirty (30) days after the training. If Defendants choose to conduct training of other employees they can use a trainer of their choosing.

57. For purposes of paras. 52-56, the term "agents" includes any architecture, civil engineering, or prime contractors used by Defendants, but shall extend only to those with primary management responsibility over the development, design, and/or construction of multi-family properties for Defendants. The term "agents" does not include other employees of those firms, or any employees of subcontractors.

### XIII. NOTICE OF DEFENDANTS' NON-DISCRIMINATION POLICY

58. Within ten (10) days of the date of entry of this Consent Order, Defendants with an ownership or management interest in a covered multifamily dwelling property will post and prominently display in the sales or rental offices of all covered multifamily dwellings owned or operated by them a sign no smaller than 10 by 14 inches indicating that all dwellings are

available for rental on a nondiscriminatory basis. A poster that comports with 24 C.F.R. Part 110 will satisfy this requirement.

59. For the duration of this Consent Order, in all future advertising in newspapers, electronic media, pamphlets, brochures, and other promotional literature regarding the Subject Properties or any new covered multifamily dwelling properties that any Defendant may develop or construct, such Defendant will place, in a conspicuous location, a statement that the dwelling units include features for persons with disabilities required by the federal Fair Housing Act.

### XIV. NOTIFICATION AND DOCUMENT RETENTION REQUIREMENTS

60. In addition to all other reporting required herein, within one hundred eighty (180) days after the date of entry of this Consent Order, Defendants will submit to the United States an initial report concerning the requirements of paras. 52–59 and containing the signed statements of Defendants and their employees and agents who have been provided a copy of the Consent Order under para. 52 and completed the training program specified in paras. 56-57 of this Order. Thereafter during the term of this Order, Defendants will, on a quarterly basis, submit to the United States a compliance report detailing the retrofitting and inspections of the retrofits at the Subject Properties under Sections III–VI. In addition, each year, on the anniversary of the entry of this Order, Defendants will submit to the United States a report concerning the requirements in paras. 40-41 concerning the future design and construction, and containing the signed statements of new employees and agents that, in accordance with para. 53 of this Consent Order, they have received and read the Consent Order and have had an opportunity to have questions about the Order answered, except that the last compliance report will be due sixty (60) days prior to the expiration of the Consent Order.

61. For the duration of this Consent Order, Defendants will advise the United States in writing within fifteen (15) days of receipt of any fair housing complaint, written or otherwise, against any property owned or managed by them, or against any employees or agents of Defendants working at or for any such property, regarding discrimination on the basis of disability in housing. Upon reasonable notice, Defendants will also provide the United States all information it may request concerning any such complaint. Defendants will also advise counsel for the United States, in writing, within fifteen (15) days of the resolution of any complaint.

62. For the term of this Consent Order, Defendants are required to preserve all records related to this Order, related to the Subject Properties, and related to any other covered multifamily dwellings designed, constructed, owned, operated, or acquired by them during the duration of this Order. Upon reasonable notice to Defendants, representatives of the United States will be permitted to inspect and copy any records of Defendants or inspect any properties or dwelling units under the control of Defendants bearing on compliance with this Order at any and all reasonable times, provided, however, that the United States will endeavor to minimize any inconvenience to Defendants and residents from such inspections.

63. All notices that Defendants are required to provide by this Order, including, but not limited to notices to current residents, past residents, employees, newspapers, and the organizations identified in para. 44, but not including notices that must be sent only to the United States, shall be in both English and Spanish.

### XV.   COMPLIANCE TESTING

64.   The United States may take steps to monitor Defendants' compliance with this Consent Order including, but not limited to, by conducting fair housing tests at any location(s) in which Defendants' employees or agents conduct rental activities.

### XVI.   TERMINATION OF LITIGATION HOLD

65.   The Parties agree that, as of the date of this Consent Order, litigation is not "reasonably foreseeable" concerning the matters described above or in the United States' Complaint.  To the extent that any Party previously implemented a litigation hold to preserve documents, electronically stored information (ESI), or things related to the matters described above, the Party is no longer required to maintain such litigation hold.  Nothing in this paragraph relieves any Party of any other obligations imposed by this Order.

### XVII.   DURATION AND TERM

66.   This Consent Order will remain in effect for three (3) years after the date of its entry or until all of the actions required of Defendants herein are completed.  The United States will confirm the completion of actions during the term if requested by Defendants.  If the actions required by this Order are not completed within three (3) years, Defendants shall submit, on the third anniversary of the entry of this Order, a report to the Court and the United States describing the unmet obligations and their projected completion date(s).  Defendants shall submit a similar report to the Court and the United States every six (6) months thereafter until all unmet obligations are completed, at which point Defendants shall submit a report certifying that all obligations have been fulfilled.  The Consent Order will expire sixty (60) days after the final report is filed with the Court.

67.   By consenting to entry of this Order, the parties agree that in the event that a Defendant engages in any future conduct occurring after entry of this Order that leads to a determination of a violation of the Fair Housing Act, such conduct will constitute a "subsequent violation" pursuant to 42 U.S.C. § 3614(d)(1)(C)(ii).  By consenting to entry of this Consent Order, the United States and parties agree that in the event that a Defendant engages in any future violation(s) of the ADA, such violation(s) will constitute a "subsequent violation" pursuant to 42 U.S.C. § 12188(b)(2)(C)(ii).

### XVIII.   TIME FOR PERFORMANCE

68.   Any time limits for performance imposed by this Consent Order may be extended by the mutual written agreement of the United States and Defendants.

   **SO ORDERED**.
In San Juan, Puerto Rico this 3rd of March, 2020.

   *s/ Gustavo A. Gelpí*
   GUSTAVO A. GELPI
   United States District Judge